PEAVY-BYRNES LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15824. Promulgated August 4, 1938.

*S. L. Herold, Esq.*, and *John B. Files, Esq.*, for the petitioner.
*John E. Marshall, Esq.*, and *Claude R. Marshall, Esq.*, for the respondent.

[6] See footnote 5, *supra.*

250

OPINION.

BLACK: Whether petitioner is entitled to have its excess profits tax for the years 1920 and 1921 determined as provided in section 328 of the Revenue Acts of 1918 and 1921, depends first upon whether it meets the required tests specified in section 327 of those acts. The material provisions of the latter section are the same in both acts and are as follows:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

\*       \*       \*       \*       \*       \*       \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a nominal invested capital \*  \*  \*.

Petitioner does not contend that it falls within any of the grounds specified in subdivisions (a), (b), or (c) of section 327, but relies solely upon subdivision (d). Cf. *Stokes Milling Co.*, 12 B. T. A. 912; *Heiner* v. *Diamond Alkali Co.*, 288 U. S. 502.

The parties are agreed that the sole question for consideration at this time is whether the record discloses abnormal conditions affecting the capital or income of petitioner. If so, petitioner has made a prima facie case under section 327 (d), *supra*, notwithstanding that it can not be determined, in the absence of comparative data, whether there is gross disproportion between the tax of this petitioner and comparable taxpayers, or whether petitioner, in the light of such comparison, would be subject to exceptional hardship. These are matters for later determination, if that be necessary, under the provisions of Rule 62 (c) of the Board's rules of practice. Cf. *Pierce Oil Corporation*, 32 B. T. A. 403, 416; *Garden City Feeder Co.*, 35 B. T. A. 770. Petitioner contends that both its capital and income were affected by abnormal conditions.

The principal abnormal condition allegedly affecting both capital and income which petitioner contends existed during the taxable years involved had its origin in the 1909 Krause & Managan contract. Petitioner contends that if Krause & Managan, in 1913, had elected under

paragraph 14 of the contract to take one-half of all the net profits and a one-half interest in all of petitioner's property instead of one-half of petitioner's capital stock, which it did elect to take, petitioner would have been entitled to take one-half of its net profits as a deduction for additional cost of timber, and that the absence of such a deduction from gross income produced an abnormality in petitioner's net income. Among the errors assigned in the original and first amended petitions were that the respondent had erred in failing to deduct from petitioner's gross income for 1920 and 1921, one-half of the net profits for those years, and, in the alternative, that the respondent had erred in failing to find that the value of the 2,500 shares of stock issued to Krause & Managan on July 28, 1913, was $562,500, which value should be allowed both for invested capital and depletion purposes, instead of the value of $125,000 allowed by the respondent. On March 10, 1928, petitioner further amended its petition to strike out $562,500 and insert in lieu thereof $613,750; and on December 5, 1931, it amended the second amended petition to strike out $613,750 and insert in lieu thereof $1,250,000. The Board and the Fifth Circuit have denied petitioner's contention for a deduction of one-half of its net profits, and it has been found from the evidence and finally decided that the value of the 2,500 shares of stock issued to Krause & Managan, or its nominees, on July 28, 1913, was $665,000, which value has been the basis for allowances in invested capital and for depletion deductions in the stipulated deficiencies set forth in our findings of fact. The alleged abnormality of capital is apparently based upon the fact that the Board did not find from the evidence that the value of the stock issued to Krause & Managan was $1,250,000, as alleged by petitioner in its third amended petition. It is true that the Board did not find that the capital stock issued to Krause & Managan had a value of $1,250,000, but that was because the evidence did not warrant it. We held that the evidence showed that the stock had a value of $665,000 on July 28, 1913, the basic date. We held, however, that these 2,500 shares were issued for the entire 206,140,227 feet in the tract on November 20, 1909; and that, since 52,124,702 feet had been cut between November 20, 1909, and July 28, 1913, leaving on the latter date 154,015,525 feet uncut, the value of the stock issued in payment of the timber standing on July 28, 1913, was 154015525/206140227 of $665,000, or $497,135.92.

In this reduction the court held that we were in error and reversed us on that point. See *Peavy-Byrnes Lumber Co.* v. *Commissioner*, 69 Fed. (2d) 712. The court in the concluding part of its opinion said:

We agree with the Board's conclusion that the cost of the timber and the value of the stock ought to be and are the same. We agree too with its conclusion that a value of $665,000 as of that date is reasonable and supported

by the evidence. We do not agree with its conclusion that any less than this amount fairly represents the then value of the stock, the then cost of the timber exchanged for it.

The order of the Board is therefore reversed and the cause is remanded with directions to redetermine petitioner's tax liability in accordance with its finding of $665,000 as the fair market value of the stock, the cost of the timber, as of July 28, 1913, when the exchange was made.

It is true that the court's opinion above referred to involved Docket No. 16354, which involved prior taxable years, but it is equally applicable here. In the stipulation filed by the parties, which has been embodied in our findings of fact, petitioner's income for the years 1920 and 1921 was recomputed on the basis of the court's opinion above referred to.

As illustrating the effect on petitioner's invested capital resulting from applying the prior Board and court decisions, we give the following example: Petitioner's invested capital, as determined in the Commissioner's deficiency notice, for the year 1920 was $483,-668.70. Now it is $698,679.36, by giving effect to the adjustments which have been made. For 1921 petitioner's invested capital as determined in the deficiency notice was $427,718.34. Now it is $745,-885.62, by giving effect to the adjustments which have been made. Petitioner, in support of its contentions that it is entitled to special assessment, cites as authority *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192; *Concrete Engineering Co.*, 19 B. T. A. 212; *Hirsch & Spitz Manufacturing Co.*, 21 B. T. A. 1186; *San Francisco Hotel Co.*, 22 B. T. A. 740; *Delaware, Lackawanna & Western Coal Co.*, 26 B. T. A. 1330; and *Pierce Oil Corporation*, 32 B. T. A. 403. The facts in this case are entirely different from the facts involved in the cases cited by petitioner and we do not regard any of them in point. Contrary to what took place in the cases above cited, all of petitioner's income producing assets, so far as we can see, have now been included in petitioner's invested capital in the manner provided by statute.

Petitioner also contends that by reason of this contract with Krause & Managan it was able to purchase timber at a total cost very much below the actual cash value of the timber and that therefore the contract possessed a certain intangible value over and above its cost of $665,000, which, although income producing, could not be included in petitioner's statutory invested capital. The facts, however, do not support petitioner in this contention. The contention would doubtless be a valid one if petitioner had paid only $4 per thousand feet as provided in paragraph 2 of the contract, but by reason of paragraph 13 of the contract, petitioner paid Krause & Managan in 1920 and 1921 much more than $4 per thousand feet

for the timber. This was in addition to the $665,000 which had already been paid under paragraph 14 of the contract. During the taxable years 1920 and 1921 petitioner cut 11,144,730 and 3,744,991 feet, respectively, from the Krause & Managan tract. The parties have stipulated that petitioner paid Krause & Managan for this timber $119,004.28 in 1920 and $21,513.39 in 1921, under paragraphs 2 and 13 of the contract. The total average cost per thousand feet of this timber to petitioner in cash in 1920 and 1921 was $10.68 and $5.74, respectively.

During the same years petitioner cut 14,318,727 and 15,008,659 feet, respectively, from sources other than the Krause & Managan tract at a total cost of $88,517.31 and $69,803.86, respectively, which is at an average cost per thousand feet of $6.18 for 1920 and $4.65 for 1921, which was considerably less than the average cost per thousand feet of the timber cut from the Krause & Managan tract. We think these facts clearly show the lack of any so-called intangible value of the Krause & Managan contract not included in invested capital, as contended for by petitioner. Cf. *Sonora Phonograph Co.*, 16 B. T. A. 1172, 1180; *Coca-Cola Bottling Works of Pittsburgh*, 19 B. T. A. 267; *Peytona Lumber Co.*, 21 B. T. A. 354; affd., 55 Fed. (2d) 27; certiorari denied, 287 U. S. 612.

We have carefully considered every phase of this case and are unable to find any abnormal conditions affecting petitioner's capital or income. On the contrary, we think this is a case where petitioner's excess profits tax, computed without the benefit of the special assessment provisions of the statute, is high merely because petitioner earned within the taxable years a high rate of profit upon a normal invested capital. It follows that petitioner is not entitled to have its excess profits tax for 1920 and 1921 determined as provided in section 328 of the Revenue Acts of 1918 and 1921. Cf. *H. D. & J. K. Croswell, Inc.*, 6 B. T. A. 1315; *Albert's, Inc.*, 10 B. T. A. 1132; *Park Amusement Co.*, 16 B. T. A. 587.

Reviewed by the Board.

> *In accordance with the stipulation, decision will be entered that there is a deficiency of $10,090.80 for the year 1920, and that there is a deficiency of $15,080.44 for the year 1921.*